IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORENZO VILLIGRANA,                                         Civil No. 06-1628-CL

        Plaintiff,                                         REPORT AND RECOMMENDATION

  v.

COLLINS PINE COMPANY aka
Fremont Sawmill,

        Defendant.

CLARKE, Magistrate Judge:

    Plaintiff brings this action against defendants alleging race discrimination under Title VII and ORS 659A.030 and workers compensation discrimination under ORS 659A.040. Plaintiff seeks declaratory relief, economic damages, non-economic damages, punitive damages, and attorney's fees and costs. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Before the court is defendant's motion for summary judgment (#31), which is opposed by plaintiff.[1] For the reasons stated, the Court recommends that defendant's motion for summary judgment be denied.

### I. FACTS

    Construing the facts in the light most favorable to the non-movant, the record

---

[1] Plaintiff withdrew his motion to strike defendant's evidence.

reveals the following:

Defendant Fremont Sawmill is located in Lakeview, Oregon. (Hart Aff. ¶ 2.) At all relevant times, defendant employed approximately 100 people, 86 of whom are hourly and 14 are salaried. Kerry Hart is the Sawmill Manager and Jerry Base is the Planer Supervisor. Base was plaintiff's supervisor from July 2000 until plaintiff's December 2005 discharge. (Hart Aff. ¶¶ 1, 3.)

Plaintiff Lorenzo Villagrana[2] was hired by defendant in June 1990 and is Mexican-American. (Eidson Aff. Ex. 33; Villagrana Decl. ¶ 2, Alpern Aff. Ex. 5.) Plaintiff was hired to work at the Paisley Sawmill. He transferred to the Fremont Sawmill in November 1992. Plaintiff's positions since July 2000 include forklift driver (July 2000 – January 2003); sorter operator (July 20003 – September 2003); handy/relief (September 2003 – December 2005). (Villagrana Dep. at 72, ll. 16-21; Villagrana Dep. Ex. 111.) His wage rate at the time of his December 2005 discharge was $15.93 per hour. (Villagrana Dep. at 216, ll. 13-17; Villagrana Dep. Ex. 111.) Plaintiff's job as handy/relief was to provide 15-minute breaks for the employees in the planer department. Plaintiff's job included breaking employees who performed the jobs of bin attendant, chain puller, forklift driver, paper wrap, planer feeder, planer feeder helper, squeeze operator and stacker operator. (Villagrana Dep. at 217, ll. 6-19.)

Defendant maintains an employee handbook. That handbook contains a Drug and Alcohol Policy and sets forth specific rules governing the use of prescription drugs at

---

[2] It appears that plaintiff's name is misspelled in the caption of his complaint. His name will be spelled in this Report and Recommendation as indicated in his declaration and deposition transcript.

Report and Recommendation - Page 2

work. (Alpern Aff. Ex. 1 at 15-20.)

From April through November 2005, Villagrana sought medical attention for work and non-work related injuries on four occasions (he slipped on a stair at work in April 2005, shot a nail from a nail gun through his thumb in July 2005, backed into a piece of steel equipment at work in September 2005, and caught his arm in the bander squeezer at work on November 10, 2005). (Villagrana Dep. at 46-51, 128-29.)

Plaintiff's injury of November 10, 2005, was accepted as a disabling condition by the workers' compensation insurer. (Eidson Aff. Exs. 35-36.)

Following plaintiff's injury on November 10, 2005, defendant's plant manager, Kerry Hart, conducted an investigation. Hart wrote in his Investigative Report: "My first reaction was 'Oh, @#$%'. . . . Raul had already had (2) recordable injuries so far this year (Strained back, and Cracked rib), that had cost his fellow workers $10M in lost Incentive Pay, not to mention the direct and indirect medical costs to the company . . . ." (Eidson Aff. Ex. 34 at 1.)

Hart stated in his report: "Raul was given a post accident drug test, (which was positive for opiates) and was released home." (Eidson Aff. Ex. 34 at 2.)

After taking plaintiff to the hospital on November 10, 2005, Hart returned to the job site for a meeting where he "got one or two comments about Raul's getting 'hurt all the time' and that was 'costing them money' (Incentive Plan)." Hart met again later with plaintiff's co-workers and "gave them the results of Raul's treatment." Hart stated: "then [plaintiff's co-workers] began to open up" about plaintiff's "Prescription Drug Abuse," Unsafe Behavior," and "Multiple Injuries." (Eidson Aff. Ex. 34 at 1-3.)

Report and Recommendation - Page 3

On November 21, 2005, plaintiff received a warning for violation of company rules relating to improper use of prescription drugs and was placed on suspension. (Eidson Aff. Ex. 38.)

Defendant routinely retests a positive urine drug test and sends the employee home. (Eidson Aff. Ex. 1 Huddleston Dep. 58:25-59:9; Ex. 34 at 34.) If a retested sample is negative, the employee is reinstated and given back pay. (Eidson Aff. Ex. 1 Huddleston Dep. at 60:11-18.) At least two employees, including Caucasian employee, Ron Collier, were reinstated after their retests were negative. (Eidson Aff. Ex. 1 Huddleston Dep. at 60:11-61:13, 61:20-63:15.) Despite the negative result of plaintiff's retested sample on November 16, 2005, plaintiff was not reinstated.

On or about November 22, 2005, at Hart's request, plaintiff submitted to a random drug and alcohol test. The results were negative. (Eidson Aff. Ex. 34 at 10-11; Ex. 39-40.)

On or about November 29, 2005, plaintiff was released by his physician to modified duty to begin November 30. (Eidson Aff. Exs. 41-42.) Defendant told plaintiff on November 30 not to return to work until December 1, 2005. (Eidson Aff. Ex. 34 at 13-14.)

On or about December 1, 2005, plaintiff was terminated, (Eidson Aff. Ex. 43), pursuant to the decision of Hart, Huddleston, and Helseth, (Eidson Aff. Ex. 44; Ex. 56 Pl. Resp. to No. 2; Ex. 34 at 13). Hart told plaintiff that plaintiff had violated two company policies, safety and prescription drugs–"Specifically, you have been driving forklift while you have been taking drugs!" (Eidson Aff. Ex. 34 at 14.) The Employee Status Change

Report and Recommendation - Page 4

form dated December 1, 2005, states that, "Raul was terminated for violation of Company Safety Policy as well as the Drug & Alcohol Policy (Prescription Drug)." (Eidson Aff. Ex. 44.)

No job deficiencies were identified in plaintiff's file before his termination. (Eidson Aff. Ex. 1 Huddleston Dep. 82:5-11.)

## II.  LEGAL STANDARDS

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ." Fed. R. Civ. P. 56(c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden

then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

### III. DISCUSSION

In plaintiff's complaint, he alleges claims for violation of 42 U.S.C. § 2000e-2 on the basis of race discrimination; violation of ORS 659A.040 on the basis of workers' compensation discrimination and retaliation; and violation of ORS 659A.030 on the basis of race discrimination. The Court will first address plaintiff's federal claim.

42 U.S.C. § 2000e-2(a)(1) Race discrimination claim

Defendant moves for summary judgment on plaintiff's claims for race discrimination on the grounds that the claims are barred by the statute of limitations and plaintiff cannot establish a prima facie case of race discrimination. Plaintiff agrees in his

Report and Recommendation - Page 6

response that the racially derogatory statements are beyond the statute of limitations, but contends that they are admissible as background evidence and relevant to his timely race discrimination claim.  Plaintiff contends that he has established a prima facie case of race discrimination and that defendant's proffered reason for his termination is pretextual and, therefore, defendant's motion should be denied.

Title VII of the Civil Rights Act makes it illegal for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment "because of" the employee's sex, or race or national origin.  42 U.S.C. § 2000e-2(a)(1).  A Title VII violation may be proved by establishing by a preponderance of the evidence  that a protected characteristic was "a motivating factor" in the employment decision.  Costa v. Desert Palace, Inc., 299 F.3d 838, 848-54 (9th Cir. 2002), aff'd, 539 U.S. 90 (2003).

Disparate treatment occurs when a plaintiff is singled out and treated less favorably than others similarly situated based on race or national origin, or gender.  See Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir. 1982).  Such a claim requires either direct or circumstantial proof of a discriminatory motive.  Washington v. Garrett, 10 F.3d 1421, 1431-32 (9th Cir. 1993); Johnson v. Shalala, 35 F.3d 402, 405 (9th Cir. 1994).

Plaintiffs often utilize the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community. Affairs v. Burdine, 450 U.S. 248 (1981), in proving their Title VII discrimination case.  Under the McDonnell Douglas/Burdine framework, a plaintiff may establish a prima facie case of

Report and Recommendation - Page 7

discrimination by introducing evidence that gives rise to an inference or rebuttable presumption of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253; Dominguez-Curry v. Nev. Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005). The parties agree that a prima facie case of employment discrimination is established where plaintiff shows that: "(1) he is member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004) (citing Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000); Bodett v. Coxcom, Inc., 366 F.3d 736, 743 (9th Cir. 2004). The amount of evidence which plaintiff must produce to establish a prima facie case is "'very little.'" Peterson, 358 F.3d at 603 (citations omitted). The proof necessary to establish a prima facie case need not rise to the level of a preponderance of the evidence. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Once the plaintiff has established a prima facie case, the burden of production, not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253, 254. The defendant must set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. Burdine, 450 U.S. at 253-55.

Report and Recommendation - Page 8

If defendant meets its burden of production, the presumption raised by the prima facie case is rebutted and the McDonnell Douglas framework is no longer relevant. Burdine, 450 U.S. at 255. A plaintiff may prove that the reason for the employer's actions is a pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer,'" Chuang, 225 F.3d at 1127; Noyes v. Kelly Servs., 488 F.3d 1163, 1170 (9th Cir. 2007). Where the evidence of pretext is circumstantial rather than direct, plaintiff must produce "specific" and "substantial" facts showing that a genuine issue exists for trial. Noyes, 488 F.3d at 1170 (citing Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)).

In a Title VII case, the burden on a plaintiff at the summary judgment stage to raise a triable issue of fact as to pretext is "'hardly an onerous one.'" Noyes, 488 F.3d at 1170 (citing Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997)). The Ninth Circuit has stated:

> This Court has set a high standard for the granting of summary judgment in employment discrimination cases. Most recently, we explained that "'[w]e require very little evidence to survive summary judgment' in a discrimination case 'because the ultimate question is one that can only be resolved through a "searching inquiry"–one that is most appropriately conducted by the factfinder, upon a full record.'"

Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996) (quoting Lam v. Univ. of Haw., 40 F.3d 1551, 1563 (9th Cir. 1994); Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir. 1991)).

Report and Recommendation - Page 9

Although evidence of alleged discriminatory acts which are time barred are not actionable, a plaintiff may use the prior acts as background evidence in support of a timely claim. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13 (2002) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge . . . may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue."). The Ninth Circuit determined in Lyons, 307 F.3d 1092, 1110-11, 1112, that,

> At the initial stage of a case of disparate treatment, appropriate background evidence will be evidence, either direct or circumstantial, that, when combined with evidence of the employer's present conduct, "give[s] rise to an inference of unlawful discrimination." Once the employer has proffered a legitimate, nondiscriminatory reason to rebut the plaintiff's *prima facie* case, appropriate background evidence will be any evidence that tends to prove the employer's discriminatory intent or otherwise to disprove the proffered legitimate reason.

(citing Burdine, 450 U.S. at 253; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); Chuang, 225 F.3d at 1127).

Plaintiff seeks to offer evidence that a prior supervisor used racial epithets toward him sometime prior to 2000 which he reported to management, (Eidson Aff. Ex. 6 Villagrana Dep. at 180-84); and that other racial comments were made to him after 2000, including a statement by his supervisor, Base, (Eidson Aff. Ex. 6 Villagrana Dep. at 186-90). Defendant asserts that this evidence is not relevant as background evidence because plaintiff did not report the alleged post-2000 comments and Hart was unaware of these allegations and, therefore, the alleged discriminatory comments do not tend to establish discriminatory intent or pretext. It appears that the relevance of this background evidence

Report and Recommendation - Page 10

in this case will depend on whether Hart or other management involved in the decision to terminate plaintiff was aware of the allegedly racial comments.  Plaintiff admits that he did not report any statements to Hart.  (Eidson Aff. Ex. 6 Villagrana Dep. at 179-80.) However, the evidence in the record is that Helseth was a decision-maker in terminating plaintiff's employment.  Plaintiff offers evidence that, at the time he complained about his prior supervisor to management, management met with Helseth and that Helseth talked to plaintiff and possibly his co-workers about the situation.  (Eidson Aff. Ex. 6 Villagrana Dep. at 181, 184.)  Thus, viewing the evidence in the light most favorable to plaintiff, plaintiff's background evidence has some relevance at the summary judgment stage which tends to show defendant's discriminatory intent or tends to disprove defendant's proffered reason for plaintiff's termination and is considered for this purpose.

      Defendant argues that it is entitled to summary judgment because plaintiff cannot sustain his prima facie case under the <u>McDonnell Douglas</u> analysis.  Defendant contends that plaintiff was not performing his job satisfactorily in light of his prescription drug use and plaintiff cannot show that he was treated less favorably than similarly situated employees because the comparators he points to are not similarly situated.  Plaintiff responds  that his performance was satisfactory and he was treated differently than non-Mexican employees.

      It is undisputed in the record that there was nothing in plaintiff's file prior to his termination which identified any job deficiencies.  The Court notes that defendant does not address this issue in its reply brief.  The Court is satisfied that plaintiff establishes that

Report and Recommendation - Page 11

he was qualified for his position.

Defendant argues that the comparators advanced by plaintiff are not similarly situated "since none of them were reportedly taking too many pain pills and/or engaging in unsafe behavior." (Def. Reply at 4.) The Ninth Circuit has stated that "individuals are similarly situated when they have similar jobs and display similar conduct." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2004) (citing Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d 558, 560-61 (8th Cir. 1997); Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir. 1999)); Wilken v. Cascadia Behavioral Health Care, Inc., No. CV 06-195-ST, 2007 WL 2916482, at *26 & n.20 (Dr. Or. Oct. 5, 2007).

Plaintiff offers evidence that employee Russell Lynn, a Caucasian, was instructed by Base, who defendant refers to as management, (Def. Concise Statement in Reply at 2 & 4), to operate a forklift after Lynn advised him that he had taken prescription pain pills before coming to work. (Eidson Aff. Ex. 6 Villagrana Dep. at 234-35, 305-06; Ex. 53 Lynn Decl. ¶ 4.) Employee Randy Curnow declares that, in his experience, when a situation involves safety versus keeping up with production, management cuts corners on safety; despite management being told that Russ Lynn always smelled of alcohol on the job, he was assigned to operate the forklift; and although a worker who was a saw filer was "staggering drunk" on the job, management ignored his obvious intoxication because the worker was key to production. (Eidson Aff. Ex 51 Curnow Decl. ¶ 6.) Plaintiff also offers evidence that plaintiff had observed the safety rules and reported to management, including Base and Hart, that Lynn was intoxicated. (Eidson Aff. Ex. 6 Villagrana Dep. at 234-35, 305-06; Ex. 53 Lynn Decl. ¶ 4.)

Report and Recommendation - Page 12

Plaintiff also offers evidence as to employee, Frank Feeley.  Plaintiff declares that Feeley took prescription medication almost every day on the job and drove the forklift; and before this litigation, Feeley was never tested, investigated, placed on administrative leave, or terminated for using prescription medication.  (Eidson Aff. Ex. 57 Villagrana Decl. ¶ 8; Ex. 6 Villagrana Dep. at 232-33.)  In its motion, defendant asserts that Feeley is not an appropriate comparator, but does not explain why; it does not address Feeley in its reply brief.  The fact that Feeley was off work from November 2006 to June 2007 and that he was discharged in June 2007 following an investigation after Feeley damaged a forklift does not account for the period July 2005 through December 2005 when he was working at the sawmill at the same time as plaintiff.  Jared Ford states in his declaration that, "During my time  working at Fremont, an employee by the name of Frank Feeley was involved in numerous accidents while on pain pills.  Frank always had a job where there were risks of bodily injury.  And Frank was on the safety committee."  (Eidson Aff. Ex. 52 Ford Decl. at 2.)

Plaintiff also offers evidence from defendant's human resources representative, Samantha Huddleston, that defendant departed from common practice by requesting a second retest of plaintiff's urine sample after the first retest came back negative.  (Eidson Aff. Ex. 1 Huddleston Dep. at 59-60.)  See Porter v. Cal. Dept. of Corr., 419 F.3d 885, 896 (9th Cir. 2005) (deviations from protocol and irregularities in process supported inference of pretext).  Further, she testified that the common practice after  a retest comes back negative and the employee had been sent home, is to reinstate the employee and pay them back pay.  (Eidson Aff. Ex. 1 Huddleston Dep. at 60-63.)  Defendant's contention

Report and Recommendation - Page 13

that the evidence regarding the second retest and the failure to reinstate is irrelevant because plaintiff's discharge was unrelated to his drug tests following his injury is without merit. This evidence tends to show that other employees similarly situated to plaintiff–employees who had a negative retest result–were treated more favorably than plaintiff, and raises an inference of discrimination.

Plaintiff also offers evidence that, while he was an employee of defendant, he never knew of an investigation like the one conducted after his November 20, 2005, on-the-job injury. (Eidson Aff. Ex. 57 Villagrana Decl. ¶ 18.) It is undisputed in the record that Hart wrote in his report of his investigation of plaintiff's injury: "My first reaction was 'Oh, @#$%'. . . . Raul had already had (2) recordable injuries so far this year (Strained back, and Cracked rib), that had cost his fellow workers $10M in lost Incentive Pay, not to mention the direct and indirect medical costs to the company . . . ." (Eidson Aff. Ex. 34 Hart Report at 1.) The record also indicates that, after Hart was on notice that plaintiff was released to return to work, he told plaintiff to stay at home; Hart completed his investigation; and fired plaintiff on December 1, 2005, when plaintiff returned to work. (Eidson Aff. Ex. 34 Hart Report.)

Plaintiff offers evidence that Frank Feeley filed multiple workers compensation claims but was not discharged. (Eidson Aff. Ex. 7 Workers Comp Claims Filed.)

Each of these items of proof raises an inference that plaintiff was discriminated against by defendant on the basis of his race and satisfies element four of his prima facie case and, therefore, plaintiff establishes a prima facie case of race discrimination.

Defendant offers as a reason for plaintiff's discharge that he violated drug/alcohol

Report and Recommendation - Page 14

and safety policies by operating a forklift after taking prescription pain medication, which qualifies as a legitimate, nondiscriminatory reason for its action.

The burden shifts back to plaintiff to show that defendant's proffered reason is pretextual. However, "a disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." Chuang, 225 F.3d at 1127 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)); see Lyons v. England, 307 F.3d 1092, 1112-13 (9th Cir. 2002). "When [the] evidence, direct or circumstantial, consists of more than the McDonnell Douglas presumption, a factual issue will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment." Schnidrig, 80 F.3d at 1410 (quoting Sischo-Nownejad, 934 F.2d at 1111). However, even though a plaintiff may have established a minimal prima facie case under McDonnell Douglas, summary judgment may be appropriate when evidence to refute defendant's legitimate explanation is totally lacking. Wallis, 26 F.3d at 890, 892 ("in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact.").

Here, plaintiff does not offer any additional evidence to what he offered to establish his prima facie case. However, the evidence offered by plaintiff, including his background evidence, as recited above, is more than needed to establish a minimal

Report and Recommendation - Page 15

McDonnell Douglas presumption.  The evidence as to Lynn -- that he operated a forklift after taking prescription pain medication, which implicates defendant's safety policies -- directly relates to the reason offered by defendant for discharging plaintiff and, in addition to the other evidence offered by plaintiff, raises a genuine issue of material fact which must be resolved by the trier of fact.  Defendant's motion for summary judgment as to plaintiff's federal claim for race discrimination should be denied.

ORS 659A.030 Race discrimination claim

Under Oregon law, it is an unlawful employment practice for an employer to discharge from employment an individual because of the individual's race or national origin.  ORS 659A.030(a)(1).  Establishing a prima facie case of discrimination for ORS Chapter 659 actions is identical to that under federal law.  Henderson v. Jantzen, Inc., 79 Or. App. 654, 657 (1986).  However, Oregon courts do not utilize the McDonnell Douglas burden-shifting.  Pascoe v. Mentor Graphics Corp., 199 F. Supp.2d 1034, 1052 & n.4 (D. Or. 2001) (citing Callan v. Confederation of Or. Sch. Adm'rs, 79 Or. App. 73, 77 (1986)); Wilken v. Cascadia Behavioral Health Care, Inc., No. CV 06-195-ST, 2007 WL 2916482, at *22 & n.16 (D. Or. Oct. 5, 2007); see Williams v. Freightliner, LLC, 196 Or. App. 83, 89 (2004) (trial court erred in applying burden shifting analysis to Oregon discrimination claims).  Therefore, under Oregon law, as applicable to plaintiff's state discrimination claims here, id., "where a plaintiff introduces evidence showing that his discharge took place under circumstances giving rise to an inference of unlawful discrimination, and thereby 'establishes a *prima facie* claim of . . . discrimination,

Report and Recommendation - Page 16

summary judgment is inappropriate even in the face of assertions by the defendant of nondiscriminatory action.'" Pascoe, 199 F. Supp.2d at 1052 (and cases cited).

The Court has found that plaintiff establishes a prima facie case of unlawful race discrimination, supra.  See Kirkwood v. W. Hyway Oil Co., 204 Or. App. 287, 289 (2006) ("Where a plaintiff presents *prima facie* evidence of discrimination, and an employer offers evidence of a nondiscriminatory motive, a genuine issue of material fact exists and the employer cannot prevail on summary judgment." (citing Hardie v. Legacy Health Sys., 167 Or. App. 425, 437 (2000), partially superseded by statute on another ground).  Even if the McDonnell Douglas burden shifting were applied to plaintiff's state race discrimination claim, the Court has determined that plaintiff presents evidence that defendant's proffered reason for discharging him was pretextual.  Accordingly, defendant's motion for summary judgment as to plaintiff's state race discrimination claim should be denied.

ORS 659A.040 Workers' compensation discrimination

Under Oregon law, "It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 . . . ."  ORS 659A.040(a)(1).  ORS Chapter 656 relates to workers' compensation law.  To establish a prima facie case of workers' compensation discrimination, a plaintiff must show:  "'(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the

Report and Recommendation - Page 17

tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system.'" Hardie v. Legacy Health Sys., 167 Or. App. 425, 437 (2000), partially superseded by statute on another ground (quoting Stanich v. Precision Body & Paint, Inc., 151 Or. App. 446, 457 (1997), abrogated on another ground by Barackman v. Anderson, 214 Or. App. 660 (2007)).  To establish the third element, plaintiff must show that the protected activity motivated the employer.  LaFord v. Kinko's, No. CV-03-181-HU, 2004 WL 1774531, at *4 (D. Or. Aug. 9, 2004) (citing Estes v. Lewis & Clark Coll., 152 Or. App. 372, 381 (1998)).

Defendant contends that plaintiff cannot satisfy the third element to establish a prima facie case.  Plaintiff offers the evidence of Hart's investigation report of plaintiff's November 10, 2005, injury, in which Hart states: "My first reaction was 'Oh, @#$%'. . . . Raul had already had (2) recordable injuries so far this year (Strained back, and Cracked rib), that had cost his fellow workers $10M in lost Incentive Pay, not to mention the direct and indirect medical costs to the company . . . ."  (Eidson Aff. Ex. 34 Hart Report at 1.)  Defendant contends that this evidence is incomplete because it does not provide the context for Hart's concern, which was worker safety.  From a review of the referenced statement,[3] the trier of fact could find that Hart's statements reflect a concern with worker

---

[3] The paragraph in its entirety reads as follows:
   My first reaction was "Oh, @#$%".  About (1-2) weeks prior, Raul stopped me in front of the Planer Breakroom, brought Augie Cobian (Planer Tray Sorter Opr.) over "as a witness" and proceed to tell me, "I am the best operator in the Planer.  I can do everything and do it better and faster than everyone else.  I deserve a pay raise!"  Since Augie was present (reluctantly) all I could say was, "I'll discuss it with Jerry when he gets back".  What I wanted to say was that Raul

safety.  However, the statements also support a finding of discrimination or retaliation based on plaintiff's invocation of the workers' compensation system.

Plaintiff also points to the timing of defendant's discharge decision, which was less than one month after his November 10, 2005, injury.  Defendant does not address this issue.  "'Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'"  Dickison v. Wal-Mart Stores, Inc., Civil No. 06-108-AA, 2007 WL 1959287, at *3 (D. Or. July 2, 2007) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)); Scott v. Sears, Roebuck & Co., 395 F. Supp.2d 961, 981 (D. Or. 2005) (issue of fact established as to causation based on timing alone); see LaFord, 2004 WL 1774531, at *5.

Here, based on plaintiff's evidence, he establishes a prima facie case of workers' compensation discrimination and shows that a genuine issue of material fact exists which should be determined by the trier of fact.  Even if the McDonnell Douglas burden shifting were applied to plaintiff's state workers' compensation discrimination claim, plaintiff presents evidence that satisfies more than the minimal McDonnell Douglas presumption

---

had already had (2) recordable injuries so far this year (Strained back, and Cracked rib), that had cost his fellow workers $10M in lost Incentive Pay, not to mention the direct and indirect medical costs to the company and rather than a raise, he deserved an attitude adjustment as it seemed he made no connection to working well and working safely.  I did bring t his to Jerry's attention when he got back and mentioned that we needed to sit down with Raul and have that safety conversation.  I was upset 11/10/05, because we had not yet had that discussion and now Raul was injured again.

(Eidson Aff. Ex. 34 Hart Report at 1-2.)

Report and Recommendation - Page 19

to raise a question whether defendant's proffered reason for discharging him was pretextual. Accordingly, defendant's motion for summary judgment as to plaintiff's state workers' compensation discrimination claim should be denied.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that defendant's motion for summary judgment (#31) be denied.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by January 4, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __21____ day of December, 2007.


____/s/ Mark D. Clarke_____
UNITED STATES MAGISTRATE JUDGE